**AULAVA of Laulii, Plaintiff**

v.

**SUNIA of Laulii, Defendant**

No. 9-1950

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Avalua" in Laulii]

March 17, 1950

A. A. MORROW, *Chief Justice;* APE, *District Judge.*

DECISION

Heard at Fagatogo Thursday, March 2, 1950.

Mulitauaopele S. for Aulava; Pitoau for Sunia.

MORROW, *Chief Justice.*

Fiti Sunia filed his application with the Registrar of Titles to have the land Avalua at Laulii registered as his individually owned property. However, at the hearing it developed that he was claiming the land as the property of himself, his brother Aitufele Sunia and his sister Merina Tuaua. Aulava of Laulii filed an objection to the proposed registration claiming the land as the communal property of the Aulava title. Hence this litigation. See Sec. 905 of the A. S. Code. The application was accompanied by a survey of the land. Prior to the hearing the court viewed the land in the presence of the parties.

Sunia, the father of Fiti, Aitufele and Merina, became the L.M.S. pastor in Laulii in 1899 and continued as such until his death on April 20, 1941. In accordance with well established Samoan custom some of the matais of the village assigned certain lands to him for his use during his pastorate. Fiti Sunia and his brother claim that the Aulava family gave the fee title to the land Avalua to Sunia in payment for an alleged pig belonging to Sunia and allegedly used by the Aulava family in connection with a wedding of an Aulava girl about September 1913. The Aulava people claim that the then Aulava, with the consent of the family, gave the land to Sunia to occupy and use during his pastorate in accordance with Samoan custom. They also claimed that in addition to Samoan custom the gift was induced by the further fact that one or two Aulava children were being brought up by Sunia with the result that the Sunia people were on very friendly terms with the Aulava people. Whatever the transaction was, it was oral. There was no deed of any kind.

The Sunia family put up a number of houses on the land and used it until Sunia's death. Apparently the property was not occupied by anyone after the death of Sunia in 1941 until late in 1946 when Fiti Sunia put up a house (the others having disappeared) on it, which house, together with the land, has been occupied and used by members of the Sunia family since its erection.

Aulava testified that the land was given to Sunia by the family of Aulava in 1913 to use during his pastorate. However, upon questioning he admitted that his testimony was based upon what others had told him. Not being based upon knowledge but only hearsay, the court cannot consider it. At the time of the alleged gift Fiti Sunia was only eight years old and his brother Aitufele was fourteen. Their testimony shows clearly that they relied upon information lately gleaned from a record book kept by their father Sunia. Such testimony was based upon hearsay and not upon knowledge and likewise cannot be considered by the court. Part of their testimony, they said, was based upon personal knowledge. They testified that they were present when the Aulava representing the family made the alleged gift to their father. That these two witnesses should be able to recall with accuracy after a period of thirty-seven years a transaction which happened when one was eight years old and the other fourteen is somewhat difficult to believe. We believe that their testimony, purporting to be grounded upon personal knowledge, was in fact confused with and grounded upon information gathered from their father's record book. They each claimed to remember that the alleged gift was made in December 1913, yet neither of them could remember whether it was two years ago or three years ago that they decided that Fiti Sunia should file a claim with the Standing Claims Commission for damages to the land arising out of the occupation of the same by the Marines during the war. We do

not suggest for a moment that Fiti Sunia or Aitufele Sunia did not believe the testimony which they gave to the court. We believe they were entirely honest but that the passage of thirty-seven years had dimmed their memories and that substantially all of what they told the court was grounded upon hearsay and not upon personal knowledge.

The transaction upon which the Sunia people claimed the land as theirs occurred thirty-seven years ago—that is admitted by everyone. In the light of the testimony itself we do not believe we could say with any assurance of being correct that this land was given outright by the Aulava people to Sunia so as to vest in him a title in fee simple. No witness purported to have any personal knowledge of the transaction other than Fiti Sunia and Aitufele Sunia and we believe that they confused their purported knowledge with information based upon hearsay. It is difficult to believe that these two witnesses could remember with accuracy an event which took place thirty-seven years ago when they were children, while at the same time fail to recall whether it was two or three years ago that they agreed to file a claim for war damages.

However, we do know that Sunia was the L.M.S. pastor in Laulii in 1913. We further know that the Sunia family and the Aulava family were on good terms and very friendly with each other. We know that it was the custom for the matais of the village to supply the pastor with land for use during his pastorate. We know that Sunia used the land from 1913 until his death in 1941. It is our conclusion from all the circumstances that this land was given to Sunia to use during his pastorate and in accordance with Samoan customs. We are fortified in that conclusion by the admitted fact that Galoipepa and Matarina, the true children of the present Aulava, began to get the coconuts and other produce from the land immediately after Sunia's death in April 1941. The evidence in addition warrants the

conclusion that not only Galoipepa and Matarina but also other members of the Aulava family got produce of the land between the time of the death of Sunia and the time Fiti Sunia put up the house on it in the fall of 1946.

There is direct contradiction in the evidence as to whether Fiti Sunia had permission of Aulava Filemoni to put up the house for the Sunia family. The substance of Fiti's testimony was to the effect that he put it up without the consent of Aulava. Aulava's testimony is to the effect that the house was put up with his permission. In view of our conclusion that the gift in 1913 was the use of the land for the period of the pastorate we must conclude that if Aulava did not give his permission to Fiti to put up his house then he (Fiti) is a trespasser and that the relatives of Fiti who are now occupying the house with Fiti's consent are wrong-doers and that their occupation of the land is illegal. In view of the admitted fact that Aulava people got the produce from the land after Sunia's death in 1941 and until the house was put up in 1946 and the admitted friendship between the children of Sunia and the Aulava family and the testimony of Aulava to the effect that the house was put up with the knowledge, consent and approval of the Aulava people, we are confident that the occupation of said Avalua by the Sunia family is lawful.

 It is our conclusion that the Sunia people (blood children of the old Sunia, namely, Fiti Sunia, Aitufele Sunia and Merina Tuaua) have an irrevocable license to occupy and use the land. In the case of *Tago Loa, Mauga S. P. and Teo v. Sami and Faafeu Mauga,* No. 33-1947 (Am. Samoa) Tago Loa had put up a house and put in plantations on land of the Mauga family with the permission of Mauga Moimoi. We held that upon the building of the house and putting in of the plantations the license to occupy and use the land became irrevocable, and that it continued until the death of Tago Loa unless sooner termi-

nated by agreement or otherwise. To permit revocation of a license to occupy and use land after a house has been put up on it and work has been done on the land in reliance upon the license would be inequitable and unjust. "In many jurisdictions where a licensee has entered under a parol license and has expended money or its equivalent in labor, it becomes irrevocable, and the licensee acquires a right of entry on the lands of the licensor for the purpose of maintaining his structures, or, in general, his rights under his license, and the license will continue for so long a time as the nature of it calls for." 33 Am.Jur., Tit. Licenses, Sec. 103.

In 37 Corpus Juris 289 it is stated that "A license being a personal, non-assignable privilege ordinarily is terminated by the death of either the licensor or the licensee, unless, in the case of the death of the licensor, his heirs elect to continue it in force."

Since the licensor in this case is the Aulava clan and the clan will not die, it follows then that the license under the circumstances of this case will terminate upon the death of the longest-lived of the three children of Sunia, namely, Fiti Sunia, Aitufele Sunia and Merina Tuaua. Fiti Aunuua, a member of the Aulava family, and a witness for Aulava testified that it "is a true fact that I am telling the court every one in the family wish that all of Sunia's descendants to continue to live on the land. As Aitufele deny the good relationship of Aulava and Sunia we want to continue on the good relationship." We think that justice will be done in this case by decreeing that the land is the communal property of the Aulava family subject to the right of Fiti Sunia, Aitufele Sunia and Merina Tuaua to occupy and use it until the survivor of them has passed away.

Accordingly it is ORDERED, ADJUDGED and DE-CREED that the land Avalua as shown in the survey be

registered as the communal family land of the Aulava title, subject to the right of Fiti Sunia, Aitufele Sunia and Merina Tuaua to occupy and use the same until the survivor of the three last-named persons has passed away. The Registrar of Titles will be so advised.

Inasmuch as Fiti Sunia bore the expense of the survey and much of the benefit of it will inure to the Aulava family it is equitable that the Aulava family pay the costs which are hereby assessed at $25.00, the same to be paid within thirty days.